UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

LARRY POWELL                    :
                                :
     v.                         :     Civ. No. 3:00CV01085 (HBF)
                                :
THOMAS SCANLON                  :
BRIAN CRONIN                    :


RULING ON MOTION FOR SUMMARY JUDGMENT

I. INTRODUCTION

Plaintiff brings this civil rights action pro se against two police officers employed by the City of Stamford, pursuant to 42 U.S.C. §1983, Amendments IV, V, VIII, and XIV to the U.S. Constitution, and the laws of the State of Connecticut.  This action arises out of plaintiff's arrest on March 4, 2000 in Stamford.  Plaintiff alleges an unreasonable search and seizure, the use of excessive force, and the intentional and negligent infliction of emotional distress.  He seeks compensatory and punitive damages.

Defendants move for summary judgment on the grounds that plaintiff's claims are barred pursuant to Heck v. Humphrey, 512 U.S. 477 (1994).

For the reasons that follow, defendants' Motion for Summary Judgment [Doc. #32] is **GRANTED** in part, and **DENIED** in part.

1

II. <u>FACTS</u>

<u>Procedural History</u>

On March 4, 2000, plaintiff Larry Powell was arrested
in Stamford, Connecticut. Following a six day trial in
Stamford Superior Court, plaintiff was found guilty of
possession of narcotics (C.G.S. 21a-279) and assault on a
police officer (C.G.S. 52a-167c(a)(1)). Superior Court
Transcript, 2/14/03 ("Ex. H") at 2, 4.[1]   Plaintiff was
sentenced to five years imprisonment followed by three years
of "special parole" in April 17, 2003. Superior Court
Transcript, 4/17/03 ("Ex. I") at 26. On August 25, 2003,
plaintiff filed an appeal of his criminal conviction, which
remains pending. ["State v. Powell," AC 24582].

Plaintiff filed this action on June 12, 2000. Plaintiff
was represented by counsel, but released his attorney on
January 6, 2003, and is now <u>pro se</u>. Although twice notified
of his responsibility to prosecute his case, plaintiff has
failed to respond to defendants' Motion for Summary
Judgment. Pursuant to Local Rule 54(b), defendants filed a

---

[1] The jury acquitted Powell of interfering with an officer
(C.G.S. 53a-167a), possession of narcotics with intent to
sell (C.G.S. 21a-278b), and possession of narcotics with
intent to sell within 1,500 feet of a public housing project
(C.G.S. 21a-278a(b)). Ex. H at 4-6.

Notice to Pro Se Litigant on March 18, 2004.  [Doc. #35].

On November 26, 2004, the court entered a notice pursuant to

Local Rule 41(a), ordering plaintiff to respond by December

15, 2004 with an explanation of why the case should not be

dismissed, or a response to defendants' motion.  [Doc. #36].

On December 14, 2004, plaintiff filed a two-page response,

restating that his claim is against Officer Brian Cronin for

the use of excessive force.  [Doc. #37].

The Court now considers defendants' Motion for Summary

Judgment.


Plaintiff's arrest for possession of narcotics

The record of plaintiff's criminal trial establishes

the following facts, which are undisputed unless otherwise

noted.

On the night of March 3, 2000, Mr. Powell left his

construction job and began walking to No. 13 Fairfield Court

to meet a female acquaintance.  Superior Court Transcript,

2/6/03 ("Ex. E") at 1-4.  En route, an individual unknown to

Powell, driving a gold Ford Taurus, offered him a ride to

the complex.  Id. at 6.  After stopping at 27 High Street,

the vehicle entered Fairfield Court and parked in a lot

behind the housing project.  Superior Court Transcript,
2/4/03 ("Ex. C") at 4-5.

Defendant Thomas Scanlon, a police officer on patrol
that night, observed the Ford Taurus parked next to 27 High
Street, a location known for drug activity.  Ex. C at 4.  He
followed the vehicle into the complex and saw Powell exit
the vehicle and enter the project.  Id. at 5.  Officer
Scanlon recognized Powell from previous narcotics
investigations.  Id. at 2, 6.  Officer Scanlon testified
that Powell was a nightly problem on his beat, but that
Powell had never been arrested on drug charges.  Id. at 23-
24.

Officer Scanlon yelled for Powell to stop, but
plaintiff continued to walk quickly towards the complex.
Ex. C at 6.  Officer Scanlon approached the driver of the
Ford Taurus, who told the officer that he did not know the
identity of his passenger.  Id. at 6-7.  Based on his
training and experience, Officer Scanlon suspected that he
had interrupted a drug deal.  Id. at 7.

Officer Scanlon walked into the complex, observed
Powell at the door of building 12 at Fairfield Court, and
asked Powell to stop and talk with him.  Ex. C at 8; Ex. E
at 14.   Powell told Officer Scanlon that the driver had

4

brought him to Fairfield Court to buy marijuana.  Ex. C at
9; Ex. E at 14.  Powell told Officer Scanlon that he was not
carrying drugs, and consented to a search.  Ex. C at 9-10;
Ex. E at 14, 98-99.  Officer Scanlon felt small rock-like
objects in the folds of Powell's knit hat, which he
recognized as bags of crack cocaine.  Ex. C at 11.

        At trial, Powell denied that he had entered the project
to obtain drugs for the driver, saying he had no intention
of returning to the car.  Ex. E at 11.  He also denied
owning or wearing the knit hat.  Id. at 16.  Powell
testified that he "had no choice" regarding Officer
Scanlon's search, and that by telling Officer Scanlon "go
ahead," he did not imply permission.  Id. at 98, 100.
Powell testified that, after searching him for the third
time, Officer Scanlon told Powell he was under arrest for
"interference."  Id. at 19.

        In his Complaint, Powell asserted that he was not
carrying drugs or weapons, and that Officer Scanlon arrested
him for interfering with a police officer because Powell
allegedly moved his right hand from the wall as Officer
Scanlon was patting him down.  Compl. at ¶8.  However, in
his Incident Report, Officer Scanlon reported that he
ordered Powell to put his hands behind his back and

attempted to handcuff Powell after discovering razor blades
and small rock-like objects in Powell's hat.  Officer
Scanlon's Incident Report, 3/4/00 ("Ex. B") at 2.

Officer Scanlon retrieved Powell's cap and recovered
six plastic bags of cocaine weighing 1.1 grams and one loose
rock of crack cocaine.  Ex. B at 4.  At trial, an expert
identified drugs as being cocaine, and the bags were
admitted as a full exhibit.  Superior Court Transcript,
2/5/03 ("Ex. D") at 83-87, 90.

On February 14, 2003, the jury found Powell guilty of
possession of narcotics.  Ex. H at 5.  However, the jury
found Powell not guilty of the crime of interfering with an
officer.  Ex. H at 6.


Defendant Officer Cronin's alleged use of excessive force

According to Officer Scanlon's Incident Report ("Ex.
B"), he ordered Powell to put his hands behind his back
after finding the drugs.  Ex. B at 2.  Powell resisted, and
Officer Scanlon had a difficult time controlling him because
of his size.  Id. at 2.  As he yelled at Powell to stop
resisting, Officer Scanlon believed that Powell was reaching
for the officer's gun.  Id. at 3.  Officer Scanlon sprayed
his department-issued cap-stun at Powell's face, but did not

6

think he had directly hit his face because Powell turned away from the Officer and covered his face. Id. Powell charged at Officer Scanlon after he stopped spraying the cap-stun and knocked the canister of pepper spray out of his hand. Id. Powell tried to run away, but Officer Scanlon tackled him and a violent struggle ensued. Id. Officer Scanlon yelled into his radio for emergency assistance. Id.

At trial, Powell denied that he had resisted arrest and claimed that Officer Scanlon "maced" him without provocation. Ex. E at 18-19, 111. Powell alleges in his Complaint that Officer Scanlon maced him while he was lying face down on the ground and handcuffed. Compl. at ¶9. Powell testified at trial that the pain caused by the mace forced him to keep his eyes closed, and that after he was sprayed he laid down and cooperated with Officer Scanlon. Ex. E at 20-23.

Officers Cronin and Dognali responded to Officer Scanlon's call. Ex. C at 50. Officer Cronin testified that, when he arrived at the scene, Officer Scanlon and Powell were fighting, and that Powell was swinging his elbows at Officer Scanlon. Id. at 52. Officer Dognali testified he was frightened that one of these "treacherous

elbows" would connect with Officer Scanlon's head or jaw. Ex. D at 38.

Officer Cronin admitted that he tried to help Officer Scanlon by kicking down on one of Powell's legs. Ex. C at 54, 90. But he denied striking Powell with a flashlight or baton. Id. at 93. As Officer Cronin attempted to control Powell's legs, Officers Dognali and Scanlon managed to force Powell's hands behind his back and handcuffed him. Ex. B at 4.

Sergeant Martin of the Stamford Police Department ("SPD") arrived at the scene after the officers had subdued Powell and testified that Scanlon looked like "he had been in the fight of his life" and that the officer's rear end, gun belt, gun, and holster were covered in mud. Ex. D at 58-59. Sergeant Van Allen of SPD also testified that Officer Scanlon was breathing heavily, and his uniform was covered with dirt, mud and grass. Id. at 103.

When Powell arrived at the hospital, his mother signed his consent to treatment form because he was under the influence of cocaine; the consent form was made a full exhibit. Ex. E at 73-77. Powell tested positive for cocaine on the date of the incident. Superior Court Transcript, 2/11/03 ("Ex. F") at 135-136.

8

At trial, Powell testified that he heard Officer Cronin say "we been wanting him" and thought that Officer Cronin "wanted to do damage" to him.  Ex. E at 27, 115.  Powell believed he was hit because he swore at Officer Cronin.  Id. at 115.

In his Complaint, plaintiff claimed that Officer Cronin struck him on the side of his head with a nightstick or flashlight, causing a cut requiring fourteen stitches to close.  Compl. at ¶ 10.  Then, Officer Cronin allegedly struck plaintiff "repeatedly" on his leg, causing it to fracture in several places.  Id. at ¶ 10.

One of Powell's witnesses, who could not identify any of the officers at trial, testified that three police officers used flashlights or something "big and black" to beat Powell while he was lying on his stomach handcuffed. Ex. F at 77, 64, 73-74.  However, Officer Miranda, another officer on the scene, testified that this witness had never appeared during the course of the incident.  Id. at 201.

An expert for the defense testified that Powell's injury looked like a direct blow to his tibia from the back or on the side.  Superior Court Transcript, 2/13/03 ("Ex. G") at 6-7.  He said the injury was consistent with blunt trauma from a flashlight, billie club, or a shod foot.  Id.

9

at 9.  He also determined that Powell's leg was not in motion at the instant that the fracture occurred.  Id. at 30.

On February 14, 2003, the jury found Powell guilty of assault on a police officer.  Ex. H at 4.

III. STANDARD OF LAW

Summary judgment is only appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56©).  A dispute regarding a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).  Disputed issues of fact are not material if the moving party would be entitled to judgment as a matter of law even if the disputed issues were resolved in favor of the non-moving party.  Such disputed factual issues, however genuine, will not preclude summary judgment.  See Anderson, 477 U.S. at 248.  On a motion for summary judgment, the court resolves "all ambiguities and draw(s) all inferences in favor of the

10

nonmoving party in order to determine how a reasonable jury would decide." <u>Alrich v. Randolph Cent. Sch. Dist.</u>, 963 F.2d 520, 523 (2d Cir. 1992). If the nonmoving party "has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof," then summary judgment is appropriate. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).

Where one party is proceeding <u>pro</u> <u>se</u>, the court reads the <u>pro</u> <u>se</u> party's papers liberally and interprets them to raise the strongest arguments they suggest. <u>See</u> <u>Burgos v. Hopkins</u>, 14 F.3d 787, 790 (2d Cir. 1994); <u>Marczeski v. Law</u>, 122 F.Supp.2d 315, 323 (D.Conn. 2000). But despite this liberal interpretation, a "bald assertion" unsupported by evidence cannot overcome a properly supported motion for summary judgment. <u>Carey v. Crescenzi</u>, 923 F.2d 18, 21 (2d Cir. 1991); <u>Walker v. Dickson</u>, 2004 WL 2187572, at *2 (D.Conn. Sept. 21, 2004).

If the nonmoving party fails to oppose a motion for summary judgment, the court may not grant the motion without first examining the moving party's submission to determine if it has met its burden of showing that no material issue of fact can be raised at trial. <u>Vermont Teddy Bear Co. v. 1-800 Beargram Co.</u>, 373 F.3d 241, 244 (2d Cir. 2004).

Furthermore, the court cannot rely solely on the evidence presented in movant's statement of undisputed facts, but must be satisfied that the citation to the evidence in the record supports the assertion.  Vermont Teddy Bear Co., 373 F.3d at 244.  The unopposed motion may also fail if these facts fail to show that movant is entitled to judgment as a matter of law.  Id. at 244.

IV. DISCUSSION

1. 42 U.S.C. §1983

Section 1983 permits a party who has been deprived of a federal right under the color of state law to seek relief via "an action at law, suit in equity, or other proper proceeding for redress."  See City of Monterey v. Del Monte Dunes at Monterey, Ltd., 526 U.S. 687, 707 (1999).  To state a cause of action under 42 U.S.C. §1983, a plaintiff must show that: 1) the conduct in question was committed by a person acting under color of state law; 2) the conduct deprived plaintiff of a right or privileges secured by the Constitution and the laws of the United States.  West v. Atkins, 487 U.S. 42, 48 (1988); Pitchell v. Callan, 13 F.3d 545, 547 (2d Cir. 1984).

12

2. <u>Plaintiff's false arrest claim</u>

Plaintiff claims that defendants, Officers Scanlon and Cronin, falsely arrested him and seeks damages for the officers' alleged violation of plaintiff's Fourth Amendment right to be free from unreasonable search and seizure.

The Supreme Court held that, "when a state prisoner seeks damages in a §1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." <u>Heck v. Humphrey</u>, 512 U.S. 477, 487 (1994).

Thus, in order to recover damages for unconstitutional imprisonment under 42 U.S.C. §1983, plaintiff must prove that the conviction or sentence "has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. §2254." <u>Heck</u>, 512 U.S. at 487.

This requirement protects against collateral attacks on outstanding criminal judgments, avoiding the possibility of an inconsistent result if the prosecutor's evidence was

dependent upon a valid arrest.  <u>Covington v. City of New York</u>, 171 F.3d 117, 124 (2d Cir. 1999).

But not all state convictions prevent §1983 actions from arising.  As the Supreme Court held in <u>Heck</u>, "if the district court determines that the plaintiff's action, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit."  <u>Heck</u>, 512 U.S. at 487.

Under Connecticut state law, the criminal prosecution must be resolved in the plaintiff's favor before plaintiff can bring a false arrest claim under §1983.  <u>Whitehorn v. Bridgeport Police Dep't</u>, No. 3:03CV1240, 2004 WL 1576706, at *3 (D. Conn. July 8, 2004) (citing <u>Roesch v. Otarola</u>, 980 F.2d 850 (2d Cir. 1992)).  "A person who thinks there is not even probable cause to believe he committed the crime for which he is charged must pursue the criminal case to an acquittal or an unqualified dismissal, or else waive his section 1983 claim."  <u>Roesch</u>, 980 F.2d at 853.

Thus, in the District of Connecticut, unlike in some jurisdictions, a cause of action for false arrest only accrues when plaintiff can satisfy this requirement.  <u>Whitehorn</u>, 2004 WL 1576706 at *3.  Although the resolution

14

of plaintiff's appeal has not been determined, the
convictions for possession of narcotics and assault on a
police officer remain valid.  Plaintiff's claim for false
arrest under §1983 is not ripe.

Even if the favorable termination requirement did not
apply in this jurisdiction, plaintiff would not be able to
state a claim for false arrest at this time, as it would
necessarily impugn his criminal conviction for possession of
narcotics.

The Second Circuit has held that a plaintiff may be
able to recover under §1983 if his conviction is obtained by
independent evidence untainted by the wrongful arrest.
Covington, 171 F.3d at 123.  On the other hand, "in a case
where the only evidence for conviction was obtained pursuant
to an arrest, recovery in a civil case, based on false
arrest, would necessarily impugn any conviction resulting
from the use of that evidence."  Id.

Here, plaintiff claims his arrest was unlawful, as he
did not have any narcotics on his person.  (Compl. at ¶8).
Therefore,  plaintiff's conviction for possession of
narcotics resulted from evidence wholly obtained by the
allegedly false arrest.  If Officer Scanlon had not searched
and arrested plaintiff, then the drugs would not have been

15

discovered, and the jury would have had no evidentiary basis
for convicting him of possession of narcotics and resisting
arrest.  Recovery by plaintiff, at this time, for false
arrest would certainly undermine the convictions, which were
based on that evidence.  Covington, 171 F.3d at 123.

        For the foregoing reasons, defendant's Motion for
Summary Judgment is **GRANTED** on the claim of false arrest.


3. Plaintiff's excessive force claim

        Plaintiff alleges that defendants used excessive force
to subdue him during his arrest, violating his Eighth
Amendment right to freedom from cruel and unusual
punishment.

        A plaintiff can claim damages under 42 U.S.C. §1983 for
excessive force while his criminal appeal is pending if
plaintiff can demonstrate that a favorable judgment would
not necessarily invalidate his conviction or sentence.
Heck, 512 U.S. at 487.

        The Second Circuit has held that a claim for excessive
force may lack the requisite relationship to the conviction
necessary for dismissal under Heck.  See Jackson v. Suffolk
County Homicide Bureau, 135 F.3d 254, 257 (2d Cir. 1998).
In Jackson, plaintiff alleged that police used excessive

16

force to coerce a confession used against him at his criminal trial.  <u>Jackson</u>, 135 F.3d at 257.  The Court held that plaintiff could state a claim under §1983 because a finding of excessive force would not necessarily have invalidated his conviction.  <u>Id.</u> at 257.  It suggested that a trial court could find that the confessions did not result from the use of force, or that the failure to suppress confessions coerced by the use of force was harmless error. <u>Id.</u>

In another case, a district court held that an inmate convicted of the sale and possession of narcotics and resisting arrest could state a claim for excessive force. <u>Smith v. Yonkers Police Dep't</u>, No. 91CIV3778, 1995 WL 489461, at *3 (S.D.N.Y. August 16, 1995).  The Court held that, although inmate's conviction for resisting arrest was a factor in determining the acceptable level of force, "it does not constitute a per se determination that any amount of force that plaintiff could prove is acceptable."  <u>Smith</u>, 1995 WL 489461 at *3.  Thus, a claim of excessive force would not necessarily impugn an inmate's conviction because a jury could find that defendants used an unreasonable level of force to detain him while he was resisting arrest.

17

Here, plaintiff was convicted of assault on a police officer, not resisting arrest. The Second Circuit has not determined whether a conviction for assault on a police officer would necessarily be impugned by a finding that the officer or officers involved used excessive force while effecting the arrest. The Court believes that the reasoning in Smith applies here, and that a conviction for assault on a police officer would not necessarily be impugned by a finding of excessive force. In this case, while plaintiff's conviction of assault on a police officer could be considered a factor in determining how much force was reasonable, a jury could still find that, under the circumstances, the amount of force used by that officer or other officers in effecting the arrest was unreasonable.

This result is supported by a Ninth Circuit case, Smithart v. Towery, 79 F.3d 951 (9th Cir. 1996). The court held that an inmate convicted of assault with a deadly weapon against police officers could claim excessive force under §1983 because a finding of excessive force would not necessarily imply the invalidity of plaintiff's conviction for assault. Smithart, 79 F.3d at 952.

In that case, the inmate alleged that, after driving at defendant officers with his truck, they provoked him into a confrontation which they "escalated beyond any necessary measure" and which led to his arrest and beating with their batons, feet, and fists. Id. at 951. Under these circumstances, the court held that a finding of excessive force would not necessarily impugn plaintiff's conviction for assault because a jury could determine that the officers' use of force was unreasonable. Id. at 952.

Because the court has determined that plaintiff's excessive force claim is not barred by Heck, and that there is a question of fact as to the reasonableness of the force used in effecting plaintiff's arrest, defendants' Motion for Summary Judgment is **DENIED** on the claim of excessive force.


V. CONCLUSION

For the reasons discussed above, defendants' Motion for Summary Judgment [Doc. #32] is GRANTED in part, and DENIED in part.

This is not a recommended ruling. The parties consented to proceed before a United States Magistrate Judge

19

[Doc. #16] on July 30, 2001, with appeal to the Court of

Appeals.

SO ORDERED at Bridgeport on this 29th day of September

2005.


_____/s/_____
HOLLY B. FITZSIMMONS
UNITED STATES MAGISTRATE JUDGE